UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

G.G.G. PIZZA, INC.,

               Plaintiff,

     - against -

DOMINO'S PIZZA, INC. and T.S.M.
LEASING CORP.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM AND ORDER**

**CV 97-4690 (DRH)**

**A P P E A R A N C E S:**

For Plaintiffs:
    **WILLIAM H. SWEENEY, JR., ESQ.**
    742 Veterans Memorial Highway
    Hauppauge, New York 11787

For Defendant Domino's Pizza, Inc.
    **RUDNICK & WOLFE**
    203 North LaSalle Street, Suite 1800
    Chicago, Illinois 60601
        By:   Fredric A. Cohen, Esq., pro hac vice
              Mai S. Shiver, Esq., pro hac vice

    **HAYTHE & CURLEY**
    237 Park Avenue
    New York, New York 10017
        By:   Edward J. Henderson, Esq.
              Linda M. Baldwin, Esq.

**HURLEY, District Judge:**

      Plaintiff commenced this proceeding by filing, on April 1, 1997, a Summons with Notice

in the Supreme Court of the State of New York, County of Suffolk. On July 24, 1997, Plaintiff

served the Summons with Notice upon Defendant Domino's Pizza, Inc. ("DPI"). By Notice of

Removal dated August 13, 1997, DPI invoked the diversity jurisdiction of this Court. Although

no complaint had been filed or served at the time of removal, the Summons with Notice

sufficiently demonstrated that the parties were diverse in citizenship and that the amount in

controversy exceeded the jurisdictional threshold. Plaintiff did not serve the Complaint upon DPI

until January 5, 1998.

By Memorandum and Order dated August 11, 1999, the Court denied without prejudice

the motion of Defendant Domino's Pizza, Inc. ("DPI"), made pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may

be granted, or, alternatively, to dismiss the Complaint for the failure of Plaintiff to timely serve

it, pursuant to New York Civil Practice Law and Rules § 3012(b). Without addressing the

grounds for dismissal under Rule 12(b)(6), the Court held that Federal Rule of Civil Procedure

4(m)[1]—rather than New York Civil Practice Law and Rules § 3012(b)—governed the timeliness

of service of process in an action, such as this one, that is removed from state court. The Court

also held that Plaintiff's service of the Complaint was untimely under that rule:

> Plaintiff had 120 days from August 13, 1997—the date on which DPI filed its
> Notice of Removal—to serve its Complaint upon DPI. As the Complaint was not
> in fact served until January 6, 1998, nearly five months after the action was
> removed, such service was untimely under Rule 4(m).

G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 103 (E.D.N.Y. 1999).

Because both DPI and Plaintiff relied upon New York procedural law in addressing

---

[1] Federal Rule of Civil Procedure 4(m) provides, in pertinent part:

> If service of the summons and complaint is not made upon a defendant
> within 120 days after the filing of the complaint, the court, upon motion or on its
> own initiative after notice to the plaintiff, shall dismiss the action without prejudice
> as to that defendant or direct that service be effected within a specified time;
> provided that if the plaintiff shows good cause for the failure, the court shall
> extend the time for service for an appropriate period.

whether the Complaint should be dismissed for untimely service, rather than dismissal under federal Rule 4(m), the Court directed the parties to file supplemental briefs addressing that potentially dispositive issue, and granted DPI leave to renew its motion on 12(b)(6) grounds in the event that the Rule 4(m) issue were not dispositive. Today, the Court concludes that Rule 4(m) *is* dispositive, and dismisses the Complaint without prejudice.

## I. DISCUSSION

Under Federal Rule of Civil Procedure 4(m), a district court *must* extend the time for service, rather than dismiss the action, if the plaintiff shows "good cause" for his failure to timely effect service. Myers v. Secretary of the Dep't of the Treasury, 173 F.R.D. 44, 46 (E.D.N.Y. 1997); Gowan v. Teamsters Union (237), 170 F.R.D. 356, 359 (S.D.N.Y. 1997); Mused v. United States Dep't of Agric. Food & Nutrition Serv., 169 F.R.D. 28, 32 (W.D.N.Y. 1996). However, Rule 4(m) also "permits a district court to enlarge the time for service 'even when there is no good cause shown.'" Henderson v. United States, 517 U.S. 654, 658 n.5 (1996). In such cases, whether an enlargement should be allowed is a matter entrusted to the district court's discretion. Myers, 173 F.R.D. at 47; Gowan, 170 F.R.D. at 360-61. In this case, Plaintiff has failed to demonstrate good cause for an enlargement of time, and the Court, in its discretion, declines to grant one.

### A. PLAINTIFF HAS NOT SHOWN GOOD CAUSE FOR ITS FAILURE TO TIMELY EFFECT SERVICE

In this case, Plaintiff's sole shareholder, Gregory Gustavson, claims that "family obligations" attending the sickness and death of his mother-in-law constitute good cause for untimely service of the Complaint:

3

11.  In August 1998[2] my family and I were living with my mother in law, Rosalind Fidelman.  This was partially due to our continued financial distress. However, even if we could have afforded to move, we had to remain living with my mother in law because she was struck with a catastrophic health crisis as she was dying with cancer.

12.  My mother in law[']s sickness required that my wife and I work around the clock to meet her needs.  My mother in law, with whom me, my wife Ronni and our three infant children, Aaron, Kevin and Rachel resided, was fighting for her life and we all tried to do all that we could to make her final days comfortable.  She was unable to afford outside nursing attention so my wife and I provided around the clock care from June 1998[3] to January 12, 1998, when she passed away.  While providing this care both my wife and I had to continue working outside the home so that we could afford to live.  It was during this period in which my attorney directed me to gather the information necessary for him to draft a complaint.  Due to my family obligations, I was unable to respond to his request in a timely manner.

(Pl.'s Aff. of Good Cause ¶¶ 11-12 (citation omitted).)  Gustavson also claims that his inability

to timely gather certain information necessary to the preparation of the Complaint constitutes good

cause:

16.  Gathering the information necessary to prepare the complaint while caring for my mother [in law] presented another obstacle.  All of my documents and notes concerning this matter were stored at different locations since the loss of our home.

17.  In and [sic] effort to gather accurate facts, I met with and spoke to Jeff Goodman, my former manager and potential purchaser.  I also spent time trying to locate others I dealt with who were previously employed with the defendant's [sic] Domino's and TSM Leasing in an effort to document the events.

18.  Through my search efforts, I couldn't find any of the franchise agreements that were the subject of this law suit.  I contacted other Domino's Pizza franchise owners that I knew in an effort to get copies of any of the franchise agreements that they had in their possession.  None of these individuals wanted to get involved or provide me with any information.

---

[2] The date should read "August 1997."  Rosa Fidelman's obituary, (Pl.'s Aff. of Good Cause Ex. A), indicates her death on January 12, 1998.

[3] Again, the date should read "June 1997."  (Cf. Pl.'s Aff. Opp'n Def.'s Mot. Dismiss ¶ 32.)

(Id. ¶¶ 16-18.)

The "family obligations" attending the sickness and death of Gustavson's mother-in-law do not constitute good cause. As explained in Braithwaite v. Johns Hopkins Hospital, 160 F.R.D. 75 (D. Md. 1995), in which the court held that the murder of the plaintiff's daughter was insufficient to constitute good cause within the meaning of Rule 4(m),

> [r]ecognition of illness or death in the family as "good cause" to delay compliance with the rule would tread a perilous path. Without intending to diminish the anguish of Plaintiff or those similarly situated to her, several other life events—job loss, foreclosure on a home, or indeed the death of a loved one due to natural causes—could also lead an individual to neglect her legal requirements. Distinguishing among and between such causes would be virtually impossible.

Id. at 78; accord Scally v. Daniluk, No. 96 Civ. 7548, 1997 WL 639036, at *2 (S.D.N.Y. Oct. 15, 1997) (holding that plaintiff's involvement in a car accident in which her father was killed several months prior to the expiration of the 120-day service limit did not constitute good cause within the meaning of Rule 4(m)); see also Hill v. Rhodes Furniture, 194 F.R.D. 604, 605 (S.D. Ohio 1999) (holding that death of sister within the 120-day period, which closely followed deaths of plaintiff's two brothers, was insufficient justification for failure "to complete the uncomplicated and undemanding process of accomplishing service").[4]

---

[4] Plaintiff argues that the Court should consider, in determining whether "good cause" exists, "'whether [Plaintiff's] asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court,'" (Pl.'s Supplemental Mem. Law Regarding Rule 4(m) at 5 (quoting Szarejko v. Great Neck Sch. Dist., 795 F. Supp. 81, 84 (E.D.N.Y. 1992)), and submits a copy of Rosalind Fidelman's obituary to demonstrate "that the death of [his] mother-in-law is not easily manufactured," (id.). Without doubting the fact of Rosalind Fidelman's death, the obituary does nothing to explain what Gustavson means when he states that he and his wife "worked around the clock to meet her needs" and that such "around the clock care [lasted] from June 199[7] to January 12, 1998." One interpretation of that language is that Gustavson is a human dynamo. Another interpretation is that the attention Gustavson paid to his mother-in-law—in addition to his three children and job—made him too busy to pay attention to his attorney's

5

Nor, in the opinion of the Court, do the difficulties encountered by Gustavson in gathering

certain information relevant to the Complaint constitute good cause for its untimely service. See

Gallas v. Supreme Court, No. CIV.A. 96-6450, 1998 WL 599249, at *5-6 (E.D. Pa. Aug. 24,

1998) (holding that plaintiff who claimed to be "busy gathering . . . evidence" had failed to

demonstrate good cause as would justify an extension of time in which to serve as yet unknown

"Doe" defendants); Bryant v. Brooklyn Barbeque Corp., 130 F.R.D. 665, 667 (W.D. Mo. 1990)

(where plaintiff filed complaint sounding in securities fraud and spent 120-day period gathering

specific information such as would allow her to amend the complaint so as to plead the securities

fraud claim with the requisite particularity, rather than serving the original complaint, plaintiff

had failed to demonstrate good cause for untimely service), aff'd, 932 F.2d 697 (8th Cir. 1991).

In that regard, the Court observes that Plaintiff waited, in its own words, until "the eve of the 6-

year Statute of Limitations" before asking an attorney to commence litigation. (Pl.'s Aff. Opp'n

Def.'s Mot. Dismiss ¶ 29.)   To the extent that passage of time or intervening changes in

circumstance have hindered Plaintiff's ability to locate documents or witnesses, that difficulty is

attributable to Plaintiff, and should not constitute "good cause" for further delay.

## B. THE COURT DECLINES TO EXERCISE ITS DISCRETION TO ENLARGE THE TIME IN WHICH TO EFFECT SERVICE OF THE COMPLAINT

It remains for the Court to determine, notwithstanding Plaintiff's failure to demonstrate

good cause, whether, in its discretion, the time in which to effect service of the Complaint should

be extended.    District courts in the Second Circuit have identified several appropriate

---

direction that he gather information for preparing the Complaint. Neither interpretation suggests
that Gustavson's failure to follow his attorney's instruction was a result of his incapacitation,
rather than his own priorities in the face of Rule 4(m)'s deadline.

considerations relevant to that determination, including "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; . . . (4) whether the defendant would be prejudiced by the granting of the plaintiff's request for relief from the provision," Eastern Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 506 (S.D.N.Y. 1999); see also Fed. R. Civ. P. 4(m) 1993 Advisory Committee Note; (5) whether steps could be taken to mitigate any such prejudice, AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 111-12 (S.D.N.Y. 2000); (6) whether the plaintiff's temporal delay in effectuating service was a short or long one, compare Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Canny, 876 F. Supp. 14, 16 (N.D.N.Y. 1995) with Gowan, 170 F.R.D. at 360-61; and (7) whether the court's exercise of discretion, under the circumstances of the case, would render the 120-day limitation of Rule 4(m) a "toothless tiger," see Mused v. United States Dep't of Agric. Food & Nutrition Serv., 169 F.R.D. 28, 33-35 (W.D.N.Y. 1996).

In this case, three of these factors weigh in favor of Plaintiff. First, it is obvious that the statute of limitations has run on Plaintiff's claims, such that a dismissal under Rule 4(m), though nominally without prejudice, will have the effect of denying Plaintiff his day in court, a result in tension with the Second Circuit's "oft-stated preference for resolving disputes on the merits." Enron Oil Corp. v. Diakuhura, 10 F.3d 90, 95 (2d Cir. 1993). Second, DPI has had notice of the claims that Plaintiff intended to assert in the Complaint from April 24, 1997, the date of service upon it of the Summons with Notice. Third, Plaintiff's twenty-five-day tardiness, though longer than some delays, see, e.g., Canny, 876 F. Supp. at 16 (granting Rule 4(m) extension

where service was effected two days beyond the 120-day limit), is certainly not so egregious as would justify dismissal alone, cf. e.g., Gowan, 170 F.R.D. at 360-61 (dismissing action sua sponte pursuant to Rule 4(m) for failure to effect service within 1250 days after complaint was filed).

The question of whether DPI would suffer prejudice is a relatively neutral factor. DPI claims that it will have been prejudiced by Plaintiff's delay in serving its Complaint because DPI will be put "in the position of having to garner proofs and witnesses regarding events that allegedly occurred over 8 years ago." (Def.'s Mem. Law on Rule 4(m) Fed. R. Civ. P. at 4 n.4). It is true that this harm may be a sufficient justification for dismissing the action under Rule 4(m), at least where, as here, the defendant shares no responsibility for the delay. Cf. McKenzie v. Amtrak M of E, 777 F. Supp. 1121-22 (S.D.N.Y. 1990). On the other hand, DPI has not pointed to specific evidence of prejudice, such as a document retention system's purging and destruction of documents, as would demonstrate that the harm it identifies non-speculative. Cf. id. Although "prejudice resulting from unreasonable delay may be presumed as a matter of law," Peart v. City of New York, 992 F.2d 458, 462 (2d Cir. 1993), such prejudice could also be counter-balanced by appropriate sanctions against Plaintiff short of outright dismissal, cf. Seal v. Riverside Fed. Sav. Bank, 825 F. Supp. 686, 692 n.9 (E.D. Pa. 1993).

The Court concludes, however, that no discretionary extension should be granted under the circumstances of this case. First, DPI has clean hands. It did not conceal a defect in service, or evade service, or somehow cause or contribute to a delay in service of the Complaint. The delay in service is wholly attributable to Plaintiff, who could have accomplished service simply by mailing a copy of the Complaint to DPI's registered agent for receipt of service of process in

8

New York—the same method employed by Plaintiff, months earlier, to serve the Summons with Notice, and the same method eventually employed by Plaintiff to accomplish service of the Complaint in tardy fashion.

Second, but for DPI's removal of this action to federal court, which commenced the ticking of the 120-day clock of Rule 4(m), Plaintiff's time in which to serve the Complaint in its chosen forum would have expired months earlier; had this action remained in state court, New York Civil Practice Law and Rules § 3012(b) would have required Plaintiff to serve the Complaint "twenty days after service of the notice of appearance" (i.e., twenty days after August 13, 1997). Far from inhibiting timely service of the Complaint, DPI can be credited for postponing Plaintiff's deadline.

Third, because a civil action is commenced in federal court by the filing of a complaint, Fed. R. Civ. P. 3, the 120-day service period of Rule 4(m), by its terms, see supra note 1, anticipates that a complaint already exists to be served. The only occasion in which a civil action will be pending in a federal district court in the complete absence of a complaint is when that action has been removed to federal court from a state jurisdiction that, unlike federal procedure, permits the commencement of the action by means other than the filing of a complaint. Therefore, it would be strange to interpret Rule 4(m) to permit a plaintiff to proffer his diligent attempts at *drafting* the complaint, as opposed to his diligent attempts at *serving* it, to satisfy the "good cause" standard. Likewise, in balancing the equities relevant to the Court's decision whether to relieve Plaintiff of the consequences of Rule 4(m), the Court thinks that to excuse Plaintiff's failure to finish even *drafting* the Complaint until January 4, 1998 (Pl.'s Aff. of Good Cause ¶ 14),—well after the 120-day *service* period had expired, and over nine months after the action was

9

commenced in state court—would be to extract the tiger's teeth.

The Court is not required to grant an extension of the time for service of process under Rule 4(m), even where the running of the limitations period will forever close the courthouse door. Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996); Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1306 & n.7 (3d Cir. 1995); see Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1094-95 (2d Cir. 1990) (same conclusion under predecessor Rule 4(j)). Although that result may seem harsh, it is warranted here.

The 120-day time limit is not an onerous one. A good faith attempt by Plaintiff to serve the Complaint within that time—even if, in hindsight, the attempt was doomed to fail—might have given the Court pause to dismiss this action. Instead, Plaintiff's procrastination in drafting the Complaint requires the Court to spend limited judicial resources—at the expense of other litigants who comply with the federal rules—on a threshold procedural issue that could have been easily avoided. Cf. Martens v. Smith Barney, Inc., 194 F.R.D. 110, 112 (S.D.N.Y. 2000) (citing Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 668 (2d Cir. 1980)).

## CONCLUSION

In accordance with the foregoing, IT IS ORDERED that the Complaint is DISMISSED without prejudice for failure to comply with Rule 4(m) of the Federal Rules of Civil Procedure. The CLERK OF COURT is directed to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:     Central Islip, New York
           July  //  , 2001

                                   S/ Denis R. Hurley
                                   DENIS R. HURLEY
                                   United States District Judge